UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JARED B. GOUDY,

    Plaintiff,

v.                                                  Case No.: 8:21-cv-2229-TPB-TGW

KURT HOFFMAN, *et al.*,

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
## THE THIRD AMENDED COMPLAINT

This matter is before the Court on "Defendants' Motion to Dismiss the Third Amended Complaint and Memorandum in Support," filed by Defendants Sarasota County Sheriff's Department (Kurt. A. Hoffman), Sergeant Arik Smith, Deputy Neal Pizzo, Deputy Clayton Reese, Sergeant Michelle Dicapua, and Deputy Lenishia Twenty on September 14, 2023.  (Doc. 36).  On October 25, 2023, *pro se* Plaintiff Jared B. Goudy filed a response in opposition.  (Doc. 40).  After reviewing the motion, response, court file, and the record, the Court finds as follows:

### Background

On October 17, 2017, the State of Florida charged Goudy by information with one count of armed burglary of a conveyance with an assault or battery in violation of § 810.02(1) and (2)(a), *F.S.*, a first-degree felony punishable by life in prison.  On March 19, 2018, the State filed a notice of intention to seek enhanced penalties as a habitual felony offender, habitual volent felony offender, and prison releasee reoffender.  Goudy proceeded to a jury trial on March 28, 2018, and he was convicted as charged.  On April

24, 2018, Goudy was sentenced as a prison releasee reoffender to a term of life in prison. Goudy filed a direct appeal, and the Second District Court of Appeal affirmed the judgment and sentence, *per curium*.

Goudy filed this 42 U.S.C. §1983 action seeking relief against the Sheriff and individual deputies based on events that "transpired during and after the investigative portion" of his underlying state criminal felony case.[1] Goudy alleges that the deputies violated his constitutional rights when they "forcefully" entered his residence to make a felony arrest without permission, writ, warrant, or exigent circumstances and destroyed exculpatory evidence (signed waivers of prosecution). Goudy further alleges that Sheriff Hoffman is responsible for the violation of his constitutional rights due to official customs and policies implemented by him or delegated by him to Sgt. Smith.

Goudy alleges that on the evening of September 27, 2017, Goudy and his then girlfriend, Jennifer Calouri, went out for dinner, drinks, and to watch a Dodgers baseball game. They had been in a "turbulent relationship" for about four months. After dinner, while driving to Goudy's residence, the two argued about not spending enough time together. Goudy claims that Calouri pulled a knife out of her glove box, threatened him, and threatened to kill one of his female acquaintances. Goudy had been driving Calouri's vehicle.

---

[1] For his factual allegations, Goudy cites portions of transcripts from a criminal case (Case No. 582017-CF-013543-XXX-ANC) from the Twelfth Judicial Circuit. The Court accepts as true the facts alleged in Goudy's third amended complaint for purposes of ruling on the pending motion to dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."). The Court is not required to accept as true any legal conclusions couched as factual allegations. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Goudy alleges that when they arrived at his residence, he told Calouri that he was done with the relationship, and he told her not to text or call him anymore. According to Goudy, Calouri "became irate jumped into the driver's seat, began wailing, threw the car into gear, and took off." Calouri was intoxicated and "cut through two of Goudy's neighbor's yards on her way out of the cul-de-sac." At his residence, Goudy realized he left his keys on the driver side floorboard of Calouri's automobile. He tried to call her, but she did not answer. Calouri was parked on the side of the road a couple houses down from Goudy's residence.

Goudy claims that he approached the vehicle and tapped on the window. Calouri was crying, but she rolled down the window. He told her that he forgot his keys, and she replied that they were not in the car. Nevertheless, Goudy reached into the car to retrieve them. According to Goudy, Calouri began punching and hitting him the ribs and shoulders, but he did not retaliate in any way and never possessed a knife. After retrieving his keys, he left and began walking home, cutting through his neighbor's yard.

Goudy alleges that Calouri drove her car to the next street, made a three-point turn, and drove back toward his house. As she approached him from behind, "she swerved into the neighbor's yard and hit him with the vehicle." He was "thrown into the air and onto the hood of her car, sustaining injuries." Goudy claims that he told Calouri to leave and threatened to call the police. She refused and instead pulled into his driveway.

Both Goudy and Calouri called 911. At 1:48 a.m., Goudy informed the dispatcher of "Calouri's intoxication, her use of a knife, their break-up, her striking him with her vehicle, his being injured from her attack, and her refusal to leave his residence after he

demanded her to do so." At 1:50 a.m., Calouri allegedly informed the dispatcher that she was not injured, and she never mentioned a weapon being used.

When law enforcement officers arrived at Goudy's home at 2:00 a.m., he was waiting inside with the door shut. After speaking with Calouri, the officers knocked on Goudy's front door. He answered the door and spoke with the officers about his 911 call. The officers "searched the area, but never located any weapon or knife." At that time, the officers left the residence, and Goudy was left alone in his home.

Sgt. Dicapua determined that the situation could be resolved if both parties signed waivers of prosecution forms. Sgt. Dicapua told Goudy that parties signed waivers of prosecution forms when they did not wish to prosecute and informed him that Calouri had already signed a waiver. After showing him Calouri's waiver, Goudy also agreed to sign a waiver. Goudy believed that at that time, the matter was resolved because both parties had signed waivers of prosecution indicating that no criminal activity occurred and neither party wished to prosecute. Goudy was then left alone inside his home a second time.

At approximately 3:00 a.m., Sgt. Arik Smith arrived and "relieved Sgt. Dicapua as on-scene supervisor." Goudy claims that Sgt. Smith knew him from a prior interaction, and that after being on the scene for approximately five minutes, Sgt. Smith persuaded Calouri to retract her waiver, ordered that both waivers be destroyed, and authorized Goudy's arrest.

Sgt. Smith approached Goudy's door with four other officers present. Goudy claims that when he answered the door, the officers – led by Sgt. Smith – forced their way into his home "without permission, writ, warrant, and in the absence of exigent

circumstances." At approximately 3:30 a.m., Goudy was arrested for aggravated assault and battery with a deadly weapon. Goudy continues to claim that he never had a weapon in his possession, and he states that law enforcement never recovered a weapon. According to Goudy, the jury was never made aware of the waivers of prosecution at his trial because "law enforcement had admittedly improperly destroyed them."

Shortly after the arrest, Goudy received medical treatment at Sarasota Memorial Hospital for injuries sustained from being struck by Calouri's vehicle, and then he was transported to Sarasota County jail. As noted, Goudy was later found guilty of armed burglary of a conveyance with an assault or battery and is currently serving a life sentence. He states that he is "currently fighting his criminal conviction."

In this suit, Goudy alleges that the unlawful search and seizure and alleged destruction of material exculpatory evidence deprived him of "his right to due process; and his right to equal protection of the laws where fairness and justice were denied." Goudy seeks to recover $1,000,000.00 "for lost wages" and $1,000,000.00 in punitive damages "for reparations."

## Legal Standard

Defendants move to dismiss the third amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Goudy has not and cannot state a claim for relief. Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In

order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 570.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995). Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009) (Lazzara, J.).

As Goudy in this case proceeds *pro se*, the Court more liberally construes the pleadings. *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2018). However, a *pro se* plaintiff must still conform to procedural rules, and the Court does not have "license to act as *de facto* counsel" on behalf of a *pro se* plaintiff. *United States v. Padgett*, 917 F.3d 1312, 1317 (11th Cir. 2019).

## Analysis

Defendants contend that Goudy fails to state a claim upon which relief can be granted because the facts alleged do not show that Sheriff Hoffman violated his civil rights due to an official policy or custom, the facts establish exigent circumstances, and the facts show that the destruction of evidence claim is barred under the favorable termination rule.

*Claim One: Official Capacity Claim Against Sheriff Hoffman*

Defendants argue that Goudy "fails to state a claim upon which relief can be granted against Sheriff Hoffman" in his official capacity. Specifically, Defendants argue that Goudy failed to show that "a policy or custom" was the "moving force" of the constitutional violation because Goudy "has not identified a formally enacted or promulgated policy of the Sheriff," nor has Goudy shown custom "because prior complaints without establishing their merit, will not demonstrate an actionable custom."[2]

"[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (citations omitted). "This bar remains in effect when State officials are sued for damages in their official capacity." *Id.* (citations omitted). That is because "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents . . . ." *Id.* (citation omitted). Thus, an official capacity claim is a claim against the entity of which the named defendant is an agent – in this case, Sarasota County. *See Owens v. Fulton County*, 877 F.2d 947, 951 n.5 (11th Cir. 1989) (citing *Kentucky*, 473 U.S. at 166).

To attribute liability to a defendant in their official capacity under § 1983, Goudy must allege that "the moving force of the constitutional violation" was an official policy or custom. *See Vineyard v. Cty. of Murray, Ga.,* 990 F.2d 1207, 1211 (1993) (quoting *Polk*

---

[2] Defendants also argue that this claim is barred by the favorable termination rule. Because the Court dismisses this claim based on the failure to allege any official policy or custom by Sheriff Hoffman that arguably violated his civil rights, the Court need not address this argument further.

*Cty. v. Dodson*, 454 U.S. 312, 326 (1981)). A policy or custom can be established by showing "either an express policy or a 'widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom and usage with the force of law.'" *Cuesta v. Sch. Bd. of Miami-Dade Cty., Fla.*, 285 F.3d 962, 966 (11th Cir. 2002) (citing *Brown v. City of Ft. Lauderdale,* 923 F.2d 1474, 1481 (11th Cir.1991)). Further, "[a] policy is a decision that is officially adopted by the [government entity], or created by an official of such rank that he or she could be said to be acting on behalf of the [government entity]." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997).

Goudy asserts both an express policy theory and a widespread and pervasive custom theory which the Sheriff either implemented himself or delegated to Sgt. Smith for implementation. Goudy first argues that the City Charter grants Sheriff Hoffman final policy making authority, and Sheriff Hoffman abused that authority by authorizing Sheriff's department employees to illegally enter his residence and to destroy relevant evidence in an ongoing case. Goudy's allegations are completely conclusory. He attempts to allege what he thinks he needs to say to keep his case in court with no factual basis whatsoever. He does not allege facts establishing any unconstitutional official policy that was implemented by Sheriff Hoffman that supports illegal searches and seizures or the destruction of evidence.

Next, Goudy argues that there is "a wide-spread pervasive custom or policy of unconstitutional practices similar to the incidents in this case being perpetrated by the Sarasota County Sheriff's Department (SCSD) and its deputies." Goudy asserts that the SCSD "has had other similar related complaints regarding the unlawful entrance,

destruction of material relevant evidence, and other illegally implemented policies and customs," and he cites to "prior incidents" where the SCSD "refused to uphold his constitutional rights."[3]  Again, these assertions are wholly conclusory.  "[T]he number of complaints bears no relation to [the] validity" of alleged police misconduct.  *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987).  Thus, Goudy has not alleged any official policy or custom by Sheriff Hoffman that arguably violated his civil rights.  *See Polk Cty.*, 454 U.S. at 326.

Alternatively, Goudy argues that Sheriff Hoffman delegated the final policy making to Sgt. Smith "who then abused his authority and created unconstitutional customs or policies."[4]  However, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Myrick v. Fulton County*, 69 F.4th 1277, 1297 (11th Cir. 2023). "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.*

Goudy does not allege that Sheriff Hoffman personally participated in any of the alleged constitutional conduct.  Thus, Goudy would need to plead sufficient facts to meet the "extremely rigorous challenge" of establishing a causal connection between Sheriff

---

[3] These "prior incidents" involve Goudy himself and perceived injustices in his prior criminal prosecutions.

[4] Insofar as Goudy is attempting to proceed on an official capacity claim against Sgt. Smith or any of the other deputies, "[t]he Court has twice explained that any official capacity claims against the defendant deputies are duplicative of the official capacity claims against Sheriff Hoffman (which actually are claims against Sarasota County and must be dismissed with prejudice.)."  Therefore, any official liability claims against Sgt. Smith and the other deputies are dismissed.

Hoffman and the alleged violation. *Id*. He fails to show a causal connection. Goudy argues that Sheriff Hoffman's "participation and causal link" is that Sheriff Hoffman "failed to implement a system that ensures that customs and polices do not violate constitutional law." These allegations are insufficient. A causal connection may be established only when "1) a 'history of widespread abuse' puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so." *Matthews v. Crosby,* 480 F.3d 1265, 1270 (11th Cir. 2007) (quoting *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir. 2003)).

Goudy does not allege sufficient facts to support an inference that Sheriff Hoffman directed Sgt. Smith or any of the subordinates to act unlawfully and failed to stop them. As noted, Goudy failed to allege sufficient facts to show a policy or custom by Sheriff Hoffman that resulted in deliberate indifference. Nor did Goudy set forth any facts of widespread abuse by Sgt. Smith which puts Goudy on notice. Goudy has been given opportunities to amend to correct these and substantially similar defects, but he has failed to do so. Consequently, Defendants' motion to dismiss is granted as to this ground, and Claim One is dismissed with prejudice, without leave to amend.

*Claim Two: Unlawful Seizure Against Individual Defendants*

Defendants argue that Goudy failed to allege a Fourth Amendment claim as to an unlawful seizure under § 1983 because the alleged "facts support there were exigent circumstances, coupled with probable cause, that made the warrantless entry" lawful.

The Fourth Amendment generally "draw[s] a firm line at the entrance to the house." *Payton v. New York,* 445 U.S. 573, 590 (1980). In fact, "[i]t is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *United States v. Franklin*, 694 F.3d 1, 7 (11th Cir. 2012) (quoting *Payton,* 445 U.S. at 586). "As a result, [a] 'warrantless arrest in a home violates the Fourth Amendment unless the arresting officer had probable cause to make the arrest and either consent to enter or exigent circumstances demanding that the officer enter the home without a warrant.'" *Moore v. Pederson*, 806 F.3d 1036, 1043 (11th Cir. 2015) (quoting *Bashir v. Rockdale Cty., Ga.*, 445 F.3d 1323, 1328 (11th Cir. 2006)). "When an officer 'conducts a warrantless search or seizure inside the home,' he bears the 'burden of proving that his conduct was justified.'" *Hardigree v. Lofton*, 992 F.3d 1216, 1224 (11th Cir. 2021) (citation omitted).

"Exigent circumstances exist when 'the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action.'" *Id.* at 224 (citing *United States v. Burgos*, 720 F.2d 1520, 1526 (11th Cir. 1983)). "Factors that indicate exigent circumstances include: (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) a reasonable belief that the suspect is armed; (3) probable cause to believe that the suspect committed the crime; (4) strong reason to believe the suspect is in the premises being entered; (5) a likelihood that delay could cause the escape of the suspect or the destruction of essential evidence, or jeopardize the safety of the officers or the public." *United States v. Standridge*, 810 F.2d 1034, 1037 (11th Cir. 1987) (collecting cases).

At this stage of the proceedings, the Court accepts as true the facts alleged by Goudy. But even these facts establish the existence of exigent circumstances. Goudy was accused of a violent crime – burglary and assault with a deadly weapon (a knife). Based on this offense, the officers had a reasonable belief that Goudy was armed. Goudy admits that the officers had probable cause to believe that he committed the crime and that the officers possessed a strong reason to believe that Goudy was located in the premises being entered. Based on the nature of the offense that Goudy was accused of committing – for which he concedes there was probable cause to arrest him – there was clearly a likelihood that delay could jeopardize the safety of the officers or the public. There was also a clear risk that delay could result in the destruction of evidence – the knife, which Goudy continues to point out was never located by officers.

Although with the "20/20 vision of hindsight[,]" the better practice might have been to obtain a warrant for Goudy's arrest from a neutral and detached magistrate, the Court cannot conclude that Defendants acted unconstitutionally where most – if not all – of the factors weigh heavily in favor of finding the existence of exigent circumstances that justify the warrantless entry and arrest. *See Smith v. LePage*, No. 1:12-CV-0740-AT, 2015 WL 13260394, at *1 (N.D. Ga. Mar. 31, 2015) ("The determination of whether a police officer's actions were constitutional must be undertaken from the perspective of a reasonable officer on the scene under the same conditions, rather than with the 20/20 vision of hindsight, as the former allows for proper appreciation of the fact that police officers are often forced to make decisions about the amount of force that is necessary in situations that are tense, uncertain, and rapidly evolving."). Even assuming that Goudy's version of events is true, he cannot state a claim for relief. The motion to

dismiss is therefore granted as to this ground, and Claim Two is dismissed with prejudice, without leave to amend.

### *Claim Three: Destruction of Evidence*

Defendants argue that Claim Three of the third amended complaint should be dismissed as barred by the favorable termination rule set forth in *Preiser v. Rodriquez*, 411 U.S. 475, 499 (1973), and expanded upon by *Heck v. Humphrey*, 512 U.S. 477 (1994) and *Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997). Specifically, Defendants argue that Goudy's claim that officers altered, destroyed, or withheld exculpatory evidence necessarily implicates the validity of his conviction and sentence, so his claim is barred under *Heck*. *See Heck*, 512 U.S. at 498; *Toth v. Rapp*, No. 18-CV-81260, 2018 WL 10731213, at *10 (S.D. Fla. Nov. 29, 2018), *report and recommendation adopted by* 2019 WL 8752271 (S.D. Fla. Jan. 22, 2019), *aff'd in part, remanded in part sub nom.*, *Toth v. Antonacci*, 788 F. App'x 688 (11th Cir. 2019).

"[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence[.]" *Heck*, 512 U.S. at 487. If judgement in favor would imply the validity of his conviction, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id*.

A conviction tainted by the suppression or destruction of material evidence violates a criminal defendant's Fourteenth Amendment right to due process. *Toth*, 2018 WL 10731213, at *10 (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). The crux of

Goudy's allegations against the officers is that his arrest, conviction, and sentence are the result of the destruction of exculpatory evidence – the waivers of prosecution. Even if Goudy purports to frame his allegations otherwise by claiming that he is not trying to invalidate his conviction, if the Court were to find that the individual officers altered or destroyed exculpatory evidence, or otherwise withheld evidence relevant to the charges against him, that judgement would necessarily imply the invalidity of his conviction and sentence.[5] *See Toth*, at *10; *see also Heck*, 512 U.S. at 489 (holding that claim of knowing destruction of exculpatory evidence in § 1983 suit was barred because it necessarily implied invalidity of conviction and sentence). Goudy has not made any showing that his conviction or sentence has been reversed, expunged, invalidated, or otherwise called into question. His cannot state a viable claim for relief.

Moreover, the Court notes that the waivers of prosecution that Goudy relies upon would not constitute exculpatory evidence. A waiver of prosecution is simply a document, sworn to and signed by a victim, that the victim does not wish to press charges or prosecute the crime. But in Florida, the State Attorney has the authority to decide whether to file charges, not the victim. As such, the State Attorney is not bound by any waivers of prosecution and may proceed with a case even if a waiver of prosecution is signed. This happens every day in state courts throughout Florida. Furthermore, it is unclear to what extent a waiver of prosecution could be introduced as evidence at trial. Because the waivers of prosecution are not exculpatory evidence,

---

[5] Confusingly, even though Goudy claims that he is not trying to "attack his conviction with this claim," he states that "if the evidence had not been destroyed and if it had been placed before the jury, there is a reasonable probability that Mr. Goudy would have been found not guilty and would not be currently serving a life sentence for something he did not do." He therefore appears to be challenging the validity of the conviction even as he attempts to frame his claim otherwise.

Goudy cannot state a clear violation of a constitutional right as to this claim.

Consequently, Claim Three is barred pursuant to *Heck* and its progeny. Defendants' motion is therefore granted, and this claim is dismissed, without leave to amend.[6]

## Conclusion

Even assuming that Goudy's allegations are true, he fails to state any viable claim for relief in Claims One, Two, or Three. His claims are therefore dismissed. Goudy has already had opportunities to amend to correct these and substantially similar defects, but he has failed to do so. The Court will not grant leave to amend again.

Accordingly, it is **ORDERED**, **ADJUDGED**, and **DECREED**:

1. "Defendants' Motion to Dismiss the Third Amended Complaint and Memorandum in Support" (Doc. 36) is **GRANTED**.

2. Claims One and Two are **DISMISSED WITH PREJUDICE**, without leave to amend. Claim Three is **DISMISSED**, without leave to amend.

3. The Clerk is directed to terminate any pending motions and deadlines, and thereafter close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, on this 30th day of September, 2024.

TOM BARBER
UNITED STATES DISTRICT JUDGE

---

[6] Goudy alleges that the destruction of the waivers was a result of either Sheriff Hoffman's "unconstitutional custom/policy" which he gave Sgt. Smith the authority to create or Sgt. Smith acted of his own accord by creating his own custom/policy to destroy the waivers which the other individual defendants carried out on his orders. However, as noted above, Goudy failed to allege sufficient facts to establish an official capacity claim or supervisory liability claim under § 1983 against either Sheriff Hoffman or Sgt. Smith. Therefore, these claims are dismissed.